**SIRI & GLIMSTAD LLP**
Mason Barney (*Pro Hac Vice to be filed*)
Email: mbarney@sirillp.com
Ursula Smith (*Pro Hac Vice to be filed)*
Email: usmith@sirillp.com
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967

**PRECEPT GROUP, LLP**
Christopher Wren Czaplak (Cal. Bar No. 338818)
Email: chris@precept.co
8030 La Mesa Blvd., #268
La Mesa, CA 91942
Telephone: 619-354-4434
Facsimile: 866-265-7238

Attorneys for Plaintiffs and Class

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| JENNIFER CARTER on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VIVENDI TICKETING US LLC d/b/a SEE TICKETS, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> Jury Trial Demanded |

Plaintiff Jennifer Carter individually and on behalf of the Classes defined below of similarly situated persons ("Plaintiffs"), allege the following against Vivendi Ticketing US LLC d/b/a See Tickets ("Vivendi") ("Defendant") based upon personal knowledge

1

with respect to herself and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## INTRODUCTION

1.      Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard Plaintiffs' and other similarly situated customers' credit card information and other sensitive records as part of a computer hack that Defendant's lacks security allowed to last for two and a half (2.5) years.  During at least nine (9) months of that time, Defendant knew it had a security issue, and permitted customers to continue to give Defendant their credit card information without notice of the issue, thereby unreasonably endangering Plaintiffs private information.

2.      Vivendi Ticketing US LLC d/b/a See Tickets is one of the leaders in the global ticketing market, with a strong presence in Europe and the United States for events such as concerts, shows, festivals, museums, theaters, trade fairs, exhibitions, and sporting events.

3.      Vivendi Ticketing US LLC d/b/a See Tickets is a wholly owned subsidiary of Vivendi Village, which is the live entertainment and ticketing business unit of Vivendi SE, the Vivendi media and communications group.

4.      In 2021 alone, Defendant provided ticketing services to 8,000 producers and event organizers and developed numerous agreements with independent producers in the United States.

5.      Defendant provided ticketing services to events where Plaintiffs purchased event tickets, and in making those purchases Defendant obtained Plaintiffs' sensitive financial information.

6.      In April 2021, Defendant was alerted to activity indicating unauthorized access by a third party to event checkout pages on the See Tickets website.  Specifically, Defendant asserts that, unbeknown to Plaintiffs, hackers accessed customer information through a skimmer injected on the See Tickets website.  Skimmers are brief JavaScript

2

codes injected into website checkout pages primarily to steal buyers' payment card details.

7.     Defendant launched an investigation with the assistance of a forensics firm, but they were only able to stop the unauthorized activity in January 2022, nine (9) months after Defendant discovered the data breach. On September 12, 2022, Defendant claims it first discovered that payment card information was included in the data subject to third party unauthorized access. Affected information includes data provided by customers (including Plaintiffs) that purchased event tickets on the See Tickets website[1] between June 25, 2019, and January 8, 2022, a period of thirty (30) months (the "Data Breach").

8.     On or about October 24, 2022, Defendant filed a data breach notice with the Texas Attorney General's office, reporting that over 92,000 Texans were affected.[2] Defendant also notified the Montana attorney general and on information and belief notified numerous other attorneys general.

9.     On or about that same day, eighteen (18) months after initially discovering the data breach, Defendant began notifying affected individuals, including Plaintiffs. As of the date of this filing, there is no mention of the data breach on Defendant's website. This means that Plaintiffs and Class Members had no idea their private information had been compromised for eighteen (18) months after Defendants knew or should have known, and that they were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

10.     Defendant's Notice of Data Breach Letters (the "**Notice Letter**") disclosed information regarding the data breach. Based on just the details in those letters it appears that the information compromised in the Data Breach included highly sensitive data that

---

[1]  https://www.seetickets.com; with a specific url directed at customer in the United States, https://www.seetickets.us.

[2] Businesses that experience a data breach of system security are required by state law to notify affected consumers and the Office of the Texas Attorney General if the breach affects 250 or more Texans.

represents a gold mine for data thieves, such as customer name, address, zip code, payment card number, expiration date, CVV number, (collectively the "Private Information") and on information and belief potentially additional personally identifiable information ("PII") that Defendant collected and maintained.

11.    Armed with the Private Information accessed in the Data Breach, and an eighteen-month head start, data thieves can commit a variety of crimes including, e.g., making fraudulent purchases and committing identity theft such as opening new financial accounts in Class Members' names.

12.    As a result of the Data Breach, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft. Defendant did not offer in its Notice Letters any form of credit monitoring services, therefore Plaintiffs and Class Members may also incur out of pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

13.    Therefore, Plaintiffs and Class Members will show that they have suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

14.    Plaintiffs bring this class action lawsuit to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and Class Members that their information had been subject to the unauthorized access and precisely what specific type of information was accessed.

15.    The potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice

4

that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

16.   Defendant and its employees failed to properly monitor the computer network and systems that housed the Private Information. Had Defendant properly monitored the See Tickets website, it would have discovered the breach sooner.

17.   Plaintiffs' and Class Members' identities are now at risk because of Defendant's negligent conduct since the Private Information that See Tickets collected and maintained is now likely in the hands of data thieves and unauthorized third parties.

18.   Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

19.   Plaintiffs seeks remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Defendant's data security systems, future annual audits, and adequate credit monitoring services funded by Defendant.

## PARTIES

20.   Plaintiff Jennifer Carter, is, and at all times mentioned herein was, an individual citizen of the State of Louisiana residing in the City of Leesville.

21.   Defendant Vivendi Ticketing US LLC d/b/a See Tickets is, and all times mentioned herein was, a live entertainment and ticketing business incorporated in the state of Delaware with its principal place of business at 6380 Wilshire Boulevard, Suite 900, Los Angeles, California 90048.

## JURISDICTION AND VENUE

22.   The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class

5

members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

23.     This Court has jurisdiction over the Defendant because it operates and has its principal place of business in this District, and the computer systems implicated in this Data Breach are likely based in and/or controlled in this District.

24.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

## DEFENDANT COLLECTS HIGHLY SENSITIVE CUSTOMER INFORMATION

25.     Defendant is one of the leaders in the global ticketing market, with a strong presence in Europe and the United States, and is a wholly owned subsidiary of Vivendi Village, which is the live entertainment and ticketing business unit of Vivendi SE, the Vivendi media and communications group.

26.     Vivendi SE is a French mass media holding company that owns Gameloft, Groupe Canal+, Havas, Editis, Prisma Media, Dailymotion, and Vivendi Village. Vivendi SE reported its revenues in the first quarter of 2022 as $2.76 billion.[3]

27.     For the first quarter of 2022, Vivendi Village's revenues were $31 million as compared to $8 million from the first quarter of 2021, a growth that is attributed to dynamic ticketing activities under the See Tickets brand.[4]

28.     Defendant provides ticketing services to producers and event organizers for events such as concerts, shows, festivals, museums, theaters, trade fairs, exhibitions, and sporting events.

29.     When purchasing an event ticket on the See Tickets website, customers provide:

---

[3] *See Press Release,* Vivendi (April 25, 2022), *available at* https://www.vivendi.com/wp-content/uploads/2022/04/20220425_VIV_PR_Vivendi-Q1-2022-revenues.pdf.
[4] *See Annual Report – Universal Registration Document 2021,* Vivendi, *available at* https://www.vivendi.com/wp-content/uploads/2022/04/20220404_VIV_Rapport-annuel-2021_VA.pdf (last visited October 27, 2022).

- Email address
- Name;
- Address;
- Zip Code;
- Payment card information;
- Payment card expiration date; and
- CVV number.

30.   At the time of the breach, Defendant promised its customers that it would not share this Personal Information with non-Vivendi owned companies third parties.[5] Other than sharing with financial organizations to process orders, and with social media companies for marketing, the See Tickets privacy policy states:

> See Tickets will only process your data with 3rd party organizations if you have consented to hearing news and data from them. See Tickets will specify who the data will be shared with during the process of purchasing a ticket. The 3rd parties may, from time to time, send you data about the event you have purchased tickets for, as well as further data for similar shows and events.
> All 3rd party organizations must adhere to the General Data Protection Act 2018.

31.   By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known, based, *inter alia*, on the nature of the information collected, that it was responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

32.   Plaintiffs and the Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

---

[5] *See US Privacy Policy,* See Tickets, *available at* https://misc.seetickets.us/privacy/#informationwemaycollect (last visited October 27, 2022).

CLASS ACTION COMPLAINT

33.     Plaintiffs and the Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

## DEFENDANT'S DATA BREACH AND NOTICE TO PLAINTIFFS

34.     Plaintiffs and the Class Members were customers of the See Tickets website. When customers of Defendant make a purchase on the website, Defendant collected personal and financial information, such as payment card information, along with name, address, and zip code.

35.     Based on the Notice Letter filed by Defendant, it was alerted to activity indicating unauthorized access by a third party to event checkout pages on the See Tickets website in April 2021.

36.     Defendant then learned that an unknown third party had obtained unauthorized access to Defendant's data starting in June 2019.   Defendant was only able to stop the unauthorized access in January 2022, nine (9) months after initially learning of the data breach and thirty (30) months after the data breach started.

37.     Defendant claims that it discovered on September 12, 2022, that the data breach included payment card information, including payment card number, expiration date, and CVV number.

38.     On or about October 24, 2022, Defendant issued Notice Letters to Plaintiffs and the Class Members, alerting them that their highly sensitive Private Information had been exposed in a data breach. This means that Plaintiffs and Class Members had no idea their Private Information had been compromised for eighteen (18) months after Defendant first learned about the data breach.

39.     The Notice Letter then attached information about identity protection, and listed generic steps that victims of data security incidents can take, such as examining account statements, getting a copy of a free annual credit report, or implementing a fraud alert or security freeze.   However, Defendant has not offered any proactive steps to

protect Plaintiff and the Class Members, such as purchasing credit monitoring on their behalf.

40.     On information and belief, Defendant sent a similar generic letter to all individuals affected.[6]

41.     Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

42.     Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access and to provide timely notice of security breaches.

## DEFENDANT FAILED TO COMPLY WITH FTC GUIDELINES

43.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making.

44.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is

---

[6] A copy of the generic version of the Notice Letter can be viewed here: https://dojmt.gov/wp-content/uploads/Consumer-Notification-Letter-638.pdf

CLASS ACTION COMPLAINT

1  attempting to hack the system; watch for large amounts of data being transmitted from
2  the system; and have a response plan ready in the event of a breach.

3      45.    The FTC further recommends that companies not maintain PII longer than
4  is needed for authorization of a transaction; limit access to sensitive data; require complex
5  passwords to be used on networks; use industry-tested methods for security; monitor for
6  suspicious activity on the network; and verify that third-party service providers have
7  implemented reasonable security measures.

8      46.    The FTC has brought enforcement actions against businesses for failing to
9  protect customer data adequately and reasonably, treating the failure to employ
10  reasonable and appropriate measures to protect against unauthorized access to
11  confidential consumer data as an unfair act or practice prohibited by Section 5 of the
12  Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these
13  actions further clarify the measures businesses must take to meet their data security
14  obligations.

15      47.    On information and belief, Defendant failed to properly implement basic
16  data security practices. Defendant's failure to employ reasonable and appropriate
17  measures to protect against unauthorized access to patient PII constitutes an unfair act or
18  practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

19      48.    Defendant was at all times fully aware of its obligation to protect the PII of
20  its customers.

21  **DEFENDANT FAILED TO COMPLY WITH INDUSTRY STANDARDS**

22      49.    Experts studying cyber security routinely identify ecommerce platforms as
23  being particularly vulnerable to cyberattacks because of the value of the PII which they
24  collect and maintain.

25      50.    Several best practices have been identified that a minimum should be
26  implemented by ecommerce providers like Defendant, including but not limited to:
27  educating all employees; strong passwords; multi-layer security, including firewalls, anti-

28

CLASS ACTION COMPLAINT

virus, and anti-malware software; encryption, making data unreadable without a key; multi-factor authentication; backup data, and; limiting which employees can access sensitive data.

51.     A number of industry and national best practices have been published and should be used as a go-to resource when developing a business' cybersecurity standards. The Center for Internet Security ("CIS") released its Critical Security Controls. The CIS Benchmarks are the only consensus-based, best-practice security configuration guides both developed and accepted by government, business, industry, and academia.[7]

52.     Other best cybersecurity practices that are standard in the ecommerce industry include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

53.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**FBI, FTC, NIST Guidelines on Protecting Customer Personal Information**

54.     Recently, the FBI issued a warning to companies about this exact type of fraud.  In the FBI's Oregon FBI Tech Tuesday: Building a Digital Defense Against E-Skimming, dated October 22, 2019, the agency stated:

---

[7] *CIS Benchmarks FAQ*, Center for Internet Security, *available at* https://www.cisecurity.org/cis-benchmarks/cis-benchmarks-faq (last visited August 10, 2022).

> This warning is specifically targeted to . . . businesses . . . that take credit card payments online. E-skimming occurs when cyber criminals inject malicious code onto a website. The bad actor may have gained access via a phishing attack targeting your employees—or through a vulnerable third-party vendor attached to your company's server.[8]

55. The FBI gave some stern advice to companies like Defendant:

> Here's what businesses and agencies can do to protect themselves:
> - Update and patch all systems with the latest security software.
> - Anti-virus and anti-malware need to be up-to-date and firewalls strong.
> - Change default login credentials on all systems.
> - Educate employees about safe cyber practices. Most importantly, do not click on links or unexpected attachments in messages.
> - Segregate and segment network systems to limit how easily cyber criminals can move from one to another.

56. But Defendant apparently did not take this advice because hackers scraped customers' Private Information off its website for a period of at least thirty (30) months until Defendant was able to cease the unauthorized access in January 2022.

57. Similarly, the Federal Trade Commission ("FTC") has held that the failure to employ reasonable measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTC Act (codified by 15 U.S.C. § 45).

58. Under the FTC Act, Defendant are prohibited from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

---

[8] https://www.fbi.gov/contact-us/field-offices/portland/news/press-releases/oregon-fbi-tech-tuesday-building-a-digital-defense-agaist-e-skimming

59.     Beginning in 2007, the FTC released a set of industry standards related to data security and the data security practices of businesses, called "Protecting Personal Information: A Guide for Businesses" (the "FTC Guide").  In 2011, this guidance was updated to include fundamental data security principles for businesses. In addition to the necessity to protect consumer data, the guide established that:

- Businesses should dispose of personal identifiable information that is no longer needed;
- Businesses should encrypt personal identifiable information and protected cardholder data stored on computer networks so that it is unreadable even if hackers are able to gain access to the information;
- Businesses should thoroughly understand the types of vulnerabilities on their network (of which malware on a point-of-sale system is one) and how to address said vulnerabilities;
- Businesses should implement protocols necessary to correct security breaches;
- Businesses should install intrusion detection systems to expose security breaches at the moment they occur;
- Businesses should install monitoring mechanisms to watch for massive troves of data being transmitted from their systems; and,
- Businesses should have an emergency plan prepared in response to a breach.

60.     On information and belief, Defendant failed to adequately address the foregoing requirements in the FTC Guide.

61.     In 2015, the FTC supplemented the FTC Guide with a publication called "Start with Security" (the "Supplemented FTC Guide").  This supplement added further requirements for businesses that maintain customer data on their networks:

- Businesses should not keep personal identifiable information and protected cardholder data stored on their networks for any period longer than what is needed for authorization;

13

- Businesses should use industry-tested methods for data security; and,
- Businesses should be continuously monitoring for suspicious activity on their network.

62.     Again, Defendant apparently failed to adequately address these requirements enumerated in the Supplemented FTC Guide.

63.     The FTC Guide is clear that businesses should, among other things: (1) protect the personal customer information they acquire; (2) properly dispose of personal information that is no longer needed; (3) encrypt information stored on computer networks; (4) understand their network's vulnerabilities; and (5) implement policies for installing vendor-approved patches to correct security vulnerabilities. The FTC guidance also recommends that businesses: (1) use an intrusion detection system to expose a breach as soon as it occurs; (2) monitor all incoming traffic for activity indicating that someone may be trying to penetrate the system; and (3) watch for large amounts of data being transmitted from the system.   Plaintiffs believe that Defendant did not follow these recommendations, and as a result exposed hundreds of thousands of consumers to harm.

64.     Furthermore, the FTC has issued orders against businesses for failing to employ reasonable measures to safeguard customer data. The orders provide further public guidance to businesses concerning their data security obligations.

65.     Defendant knew or should have known about their obligation to comply with the FTC Act, the FTC Guide, the Supplemented FTC Guide, and many other FTC pronouncements regarding data security.

66.     Thus, among other things, Defendant's misconduct violated the FTC Act and the FTC's data security pronouncements, which led to the Data Breach, and resulted directly and proximately in harm to Plaintiffs and the Class Members.

67.     Additionally, the National Institute of Standards and Technology (NIST) provides basic network security guidance that enumerates steps to take to avoid

14

cybersecurity vulnerabilities. Although use of NIST guidance is voluntary, the guidelines provide valuable insights and best practices to protect network systems and data.

68. NIST guidance includes recommendations for risk assessments, risk management strategies, system access controls, training, data security, network monitoring, breach detection, and mitigation of existing anomalies.

69. Defendant's failure to protect massive amounts of Payment Information throughout the multi-month breach period belies any assertion that Defendant employed proper data security protocols or adhered to the spirit of the NIST guidance.

## DEFENDANT'S SECURITY OBLIGATIONS

70. Defendant breached their obligations to Plaintiffs and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a. Failing to maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b. Failing to adequately protect customers' Private Information;

    c. Failing to properly monitor its own data security systems for existing intrusions;

    d. Failing to fully comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act, and;

    e. Failing to adhere to industry standards for cybersecurity.

71. On information and belief, as the result of computer systems in need of security upgrading, inadequate procedures for handling emails containing viruses or other malignant computer code, and employees who opened files containing the virus or malignant code that perpetrated the cyberattack, Defendant negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

15

72.    Accordingly, as outlined below, Plaintiffs' and Class Members' daily lives were severely disrupted. What's more, they now face an increased risk of fraud and identity theft. Plaintiffs and the Class Members also lost the benefit of the bargain they made with Defendant.

## DATA BREACHES, FRAUD AND IDENTITY THEFT

73.    In a debit or credit card purchase transaction, card data must flow through multiple systems and parties to be processed. Generally, the cardholder presents a credit or debit card to an e-commerce retailer (through an e-commerce website) to pay for merchandise. The card is then "swiped" and information about the card and the purchase is stored in the retailer's computers and then transmitted to the acquirer or processor (i.e., the retailer's bank). The acquirer relays the transaction information to the payment card company, who then sends the information to the issuer (i.e., cardholder's bank). The issuer then notifies the payment card company of its decision to authorize or reject the transaction. See graphic below:[9]



| | |
|---|---|
| 1 | The consumer selects a card for payment. The cardholder data is entered into the merchant's payment system, which could be the point-of-sale (POS) terminal/software or an e-commerce website. |
| 2 | The card data is sent to an acquirer/payment processor, whose job it is to route the data through the payments system for processing. With e-commerce transactions, a "gateway" provider may provide the link from the merchant's website to the acquirer. |
| 3 | The acquirer/processor sends the data to the payment brand (e.g. Visa, MasterCard, American Express, etc.) who forward it to the issuing bank/issuing bank processor. |
| 4 | The issuing bank/processor verifies that the card is legitimate, not reported lost or stolen, and that the account has the appropriate amount of credit/funds available to pay for the transaction. |
| 5 | If so, the issuer generates an authorization number and routes this number back to the card brand. With the authorization, the issuing bank agrees to fund the purchase on the consumer's behalf. |
| 6 | The card brand forwards the authorization code back to the acquirer/processor. |
| 7 | The acquirer/processor sends the authorization code back to the merchant. |
| 8 | The merchant concludes the sale with the customer. |

---

[9] "Payments 101: Credit and Debit Card Payments," (First Data) *available at* http://euro.ecom.cmu.edu/resources/elibrary/epay/Payments-101.pdf (last visited October 27, 2022); *see also* "Payments 101: An Intro to Card Networks and Card Transactions" (Very Good Security), *available at* https://www.verygoodsecurity.com/blog/posts/payments-101-an-intro-to-card-networks-and-card-transactions (last visited October 27, 2022).

16

---

74.     There are two points in the payment process where sensitive cardholder data is at risk of being exposed or stolen: pre-authorization when the merchant has captured a consumer's data and it is waiting to be sent to the acquirer; and post-authorization when cardholder data has been sent back to the merchant with the authorization response from the acquirer, and it is placed into some form of storage in the merchant's servers.

75.     Encryption mitigates security weaknesses that exist when cardholder data has been stored, but not yet authorized, by using algorithmic schemes to transform plain text information into a non-readable format called "ciphertext." By scrambling the payment card data the moment it is "swiped," hackers who steal the data are left with useless, unreadable text in the place of payment card numbers accompanying the cardholder's personal information stored in the retailer's computers.

76.     However, when the data is not encrypted, hackers can target what they refer to as the *fullz*–a term used by criminals to refer to stealing the full primary account number, card holder contact information, credit card number, CVC code, and expiration date. The *fullz* is exactly what appears to have been scraped from Defendant's ecommerce platform. Typically, these hackers insert virtual credit card skimmers or scrapers (also known as *formjacking*) into a web application (usually the shopping cart) and proceed to scrape credit card information to sell on the dark web.[10]

77.     At the very least, Defendant chose not to invest in the technology to encrypt payment card data at point-of-sale to make its customers' data more secure; failed to install updates, patches, and malware protection or to install them in a timely manner to protect against a data security breach; and/or failed to provide sufficient control employee credentials and access to computer systems to prevent a security breach and/or theft of payment card data.

---

[10] *Magecart Hits 80 Major eCommerce Sites in Card-Skimming Bonanza*, Threatpost (August 28, 2019), *available at*: https://threatpost.com/magecart-ecommerce-card-skimming-bonanza/147765/.

CLASS ACTION COMPLAINT

78.     The FTC hosted a workshop to discuss "informational injuries" which are injuries that consumers suffer from privacy and security incidents, such as data breaches or unauthorized disclosure of data.[11] Exposure of personal information that a consumer wishes to keep private may cause both market and non-market harm to the consumer, such as the ability to obtain or keep employment and negative impact on consumer's relationships with family, friends, and coworkers. Consumers loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

79.     Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims, or take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity, or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

80.     The detailed information potentially obtained in the instant data breach regarding the nature of the purchases Plaintiffs and Class Members made on the See

---

[11] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf.

CLASS ACTION COMPLAINT

Tickets website makes the risk of phishing attacks even greater. With detailed purchase information, criminals will be able to reference those specific purchases that Plaintiffs and Class Members will recognize, making it harder for Plaintiffs and Class Members to identify such phishing attacks.

81.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[12]

82.     A study by Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of PII:[13]



83.     Moreover, theft of Private Information is also gravely serious. Its value is axiomatic, considering the value of "big data" in corporate America and the fact that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to

---

[12] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited August 11, 2022).

[13] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/.

---

CLASS ACTION COMPLAINT

reward analysis illustrates beyond doubt that Private Information has considerable market value.

84.     It must also be noted there may be a substantial time lag – measured in years -- between when harm occurs and when it is discovered, and between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[14]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

85.     Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

86.     There is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members must vigilantly monitor their financial accounts for many years to come.

## PLAINTIFFS AND CLASS MEMBERS' DAMAGES

87.     Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

88.     Plaintiffs' Private Information, including their sensitive PII, was compromised as a direct and proximate result of the Data Breach.

---

[14] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html.

CLASS ACTION COMPLAINT

89.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from fraud, identity theft, and burglary regarding their firearms.

90.    As a direct and proximate result of Defendant's conduct, Plaintiffs and Class Members have been forced to expend time dealing with the effects of the Data Breach.

91.    Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as fraudulent transactions billed in their names, loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

92.    Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information as potential fraudsters could use that information to target such schemes more effectively to Plaintiffs and Class Members.

93.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, along other similar costs directly or indirectly related to the Data Breach.

94.    The information that Defendant maintain regarding Plaintiffs and Class Members, when combined with publicly available information, would allow nefarious actors to paint a complete financial and personal history of Plaintiffs and Class Members.

95.    Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiffs and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiffs and Class Members paid to Defendant was intended to be used by Defendant to fund adequate security of Defendant's computer property and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class Members did not get what they paid for.

21

96.     Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts and records for misuse.

97.     Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

   a.  Finding fraudulent charges;

   b.  Canceling and reissuing credit and debit cards;

   c.  Purchasing credit monitoring and identity theft prevention;

   d.  Addressing their inability to withdraw funds linked to compromised accounts;

   e.  Taking trips to banks and waiting in line to obtain funds held in limited accounts;

   f.  Placing "freezes" and "alerts" with credit reporting agencies;

   g.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

   h.  Contacting financial institutions and closing or modifying financial accounts;

   i.  Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

   j.  Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

   k.  Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

CLASS ACTION COMPLAINT

98.     Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing personal and financial information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

99.     As a direct and proximate result of Defendant's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and either have suffered harm or are at an imminent and increased risk of future harm.

## CLASS ALLEGATIONS

100.    Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

101.    Plaintiffs proposes the following Class definitions, subject to amendment as appropriate:

**Nationwide Class** (the "Class")
All individuals in the United States whose Private Information or other PII was stored or possessed by Defendant who were subject to the Data Breach announced by Defendant on or about October 24, 2022, including those who Defendant identified as being among those individuals impacted by the Data Breach, and all persons who were sent a notice of the Data Breach.

**Louisiana State Subclass** (the "State Subclass")
All residents of Louisiana whose Private Information or other PII was stored or possessed by Defendant who were subject to the Data Breach announced by Defendant on or about October 24, 2022, including those who Defendant identified as being among those individuals impacted by the Data Breach, and all persons who were sent a notice of the Data Breach.

102.    Excluded from each of the above Classes are Defendant and their parents or subsidiaries, any entities in which it has a controlling interest, as well as its officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns.

1    Also excluded are any Judge to whom this case is assigned as well as his or her judicial

2    staff and immediate family members.

3        103.    Plaintiffs reserve the right to modify or amend the definitions of the

4    proposed Classes before the Court determines whether certification is appropriate.

5        104.    Each of the proposed classes meet the criteria for certification under Fed. R.

6    Civ. P. 23(a), (b)(2), and (b)(3).

7        105.    <u>Numerosity</u>**.** The Class Members are so numerous that joinder of all

8    members is impracticable. Though the exact number and identities of Class Members are

9    unknown at this time, according to disclosures made to the Texas Attorney General,

10   92,074 individuals in Texas alone were affected, therefore, Plaintiff believes the Class

11   consists of hundreds of thousands of customers of Defendant whose data was

12   compromised in the Data Breach. The identities of Class Members are ascertainable

13   through Defendant's records, Class Members' records, publication notice, self-

14   identification, and other means.

15       106.    <u>Commonality</u>. There are questions of law and fact common to the Class,

16   which predominate over any questions affecting only individual Class Members. These

17   common questions of law and fact include, without limitation:

18           a.  Whether Defendant engaged in the conduct alleged herein;

19           b.  When Defendant actually learned of the data breach and whether its

20               response was adequate;

21           c.  Whether Defendant unlawfully used, maintained, lost, or disclosed

22               Plaintiffs' and Class Members' Private Information;

23           d.  Whether Defendant failed to implement and maintain reasonable

24               security procedures and practices appropriate to the nature and scope

25               of the information compromised in the Data Breach;

26

27

28

CLASS ACTION COMPLAINT

e. Whether Defendant's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

f. Whether Defendant's data security systems prior to and during the Data Breach were consistent with industry standards;

g. Whether Defendant owed a duty to Class Members to safeguard their Private Information;

h. Whether Defendant breached their duty to Class Members to safeguard their Private Information;

i. Whether computer hackers obtained Class Members' Private Information in the Data Breach;

j. Whether Defendant had a legal duty to provide timely and accurate notice of the data breach to Plaintiffs and the Class Members;

k. Whether Defendant breached their duty to provide timely and accurate notice of the data breach to Plaintiffs and the Class Members;

l. Whether Defendant knew or should have known that their data security systems and monitoring processes were deficient;

m. What damages Plaintiffs and Class Members suffered as a result of Defendant's misconduct;

n. Whether Defendant's conduct was negligent;

o. Whether Defendant's conduct was *per se* negligent;

p. Whether Defendant was unjustly enriched;

q. Whether Defendant's conduct violated the Louisiana Database Security Breach Notification Law, invoked below;

r. Whether Defendant's conduct violated the California Unfair Competition Law, invoked below;

25

s.  Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

t.  Whether Plaintiffs and the other Class Members are entitled to additional credit or identity monitoring and are entitled to other monetary relief; and

u.  Whether Plaintiffs and the Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

107.  <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

108.  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

109.  <u>Predominance</u>. Defendant have engaged in a common course of conduct toward Plaintiffs and Class Members, in that all the Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendant's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

110.  <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which

26

would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

111.   Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Defendant has acted or has refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

112.   Finally, all members of the proposed Class are readily ascertainable. Defendant has access to Class Members' names and addresses affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## **CLAIMS FOR RELIEF**

### **COUNT I**
### **NEGLIGENCE**
### **(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASS)**

113.   Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

114.   Defendant knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

115.   Defendant knew, or should have known, of the risks inherent in collecting the Private Information of Plaintiffs and the Class Members and the importance of adequate security.

116.   Defendant owed a duty of care to Plaintiffs and the Class Members whose Private Information was entrusted to them. Defendant's duties included, but were not limited to, the following:

    a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting Private Information in their possession;

    b.  To protect customers' Private Information using reasonable and adequate security procedures and systems that are compliant with the industry standards;

    c.  To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

    d.  To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to the California law (where Defendant is headquartered), specifically the Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.;*

    e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.  To promptly notify Plaintiffs and the Class Members of the data breach, and to disclose precisely the type(s) of information compromise.

117.   Plaintiffs and the Class Members were foreseeable and probable victims of any inadequate security practices, and Defendant owed them a duty of care not to subject them to an unreasonable risk of harm.

118.   Defendant, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within Defendant's possession.  This includes the fact that Defendant mislead Plaintiffs and the Class Members, and induce them to rely on its misrepresentations and omissions, by

28

delaying for more than eighteen (18) months in notifying customers about the data breach, including during the nine-month period when Defendant knew it had a security problem but did not publicly announce that fact.

119. Defendant, by its actions and/or omissions, breached its duty of care by failing to provide, or by acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and the Class Members.

120. Defendant, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

121. Defendant acted with reckless disregard for the rights of Plaintiffs and the Class Members by failing to provide prompt and adequate individual notice of the data breach so that they could take measures to protect themselves from damages caused by the fraudulent use the Private Information compromised in the data breach.

122. Defendant had a special relationship with Plaintiffs and the Class Members. Plaintiffs' and the Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems (and the Private Information that it stored on them) from attack.

123. Defendant's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised.

124. Defendant's breaches of duty caused a foreseeable risk of harm to Plaintiffs and Class Members to suffer from identity theft, loss of time and money to monitor their finances for fraud, and loss of control over their Private Information.

125. As a result of Defendant's negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, and will be used for fraudulent purposes.

126.   Defendant also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and the Class Members' Private Information and promptly notify them about the data breach.

127.   But for Defendant's wrongful and negligent breach of the duties it owed Plaintiffs and the Class Members, their Private Information either would not have been compromised or they would have been able to prevent some or all their damages.

128.   As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and the Class Members have suffered damages and are at imminent risk of further harm.

129.   The injury and harm that Plaintiffs and the Class Members suffered (as alleged above) was reasonably foreseeable.

130.   The injury and harm that Plaintiffs and the Class Members suffered (as alleged above) was the direct and proximate result of Defendant's negligent conduct.

131.   Plaintiffs and the Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

132.   In addition to monetary relief, Plaintiffs and the Class Members also are entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASS)**

133.   Plaintiffs restate and reallege the allegations in paragraphs 1-112 as if fully set forth herein.

134.   Pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and

data security to safeguard the Private Information, including PII, of Plaintiffs and the Class Members.

135.   Plaintiffs and the Class Members are within the class of persons that the FTCA is intended to protect.

136.   The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect Private Information. The FTC publications described above, and the industry standard data and cybersecurity measures, also form part of the basis of Defendant's duty in this regard.

137.   Defendant violated the FTCA by failing to use reasonable measures to protect Private Information of Plaintiffs and the Class and not complying with applicable industry standards, as described herein.

138.   Defendant's violations of the FTCA constitute negligence *per se*.

139.   In connection with its consumer transactions, Defendant engaged in unfair, abusive or deceptive acts, omissions or practices by, misrepresenting material facts to Plaintiffs and the Class, in connection with providing utility services, by representing that Defendant did and would comply with the requirements of relevant federal and state law pertaining to the privacy and security of Plaintiffs and the Class Members' Private Information, such requirements included, but are not limited to, those imposed by laws such as the FTCA.

140.   It was reasonably foreseeable that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendant's servers, networks, databases, and/or computers that stored or contained Plaintiffs' and Class Members' Private Information.

CLASS ACTION COMPLAINT

141. Plaintiffs' and Class Members' Private Information constitutes personal property that was stolen due to Defendant's negligence, resulting in harm, injury and damages to Plaintiffs and Class Members.

142. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class and/or the State Subclass have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including PII, as a result of the data breach including but not limited to damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives.

143. Defendant breached its duties to Plaintiffs and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Class Members' Private Information.

144. But for Defendant's wrongful and negligent breach of its duties owed to Plaintiffs and the Class Members, Plaintiffs and the Class Members would not have been injured.

145. The injury and harm suffered by Plaintiffs and the Class Members was the reasonably foreseeable result of Defendant's breach of its duties. Defendant knew or should have known that it was failing to meet their duties, and that Defendant's breach would cause Plaintiffs and the Class Members to experience the foreseeable harms associated with the exposure of their Private Information.

146. As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class Members have suffered, and continue to suffer, injuries damages arising from their inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the data breach and/or false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by contacting their financial

institutions to place to dispute fraudulent charges, closing or modifying financial accounts, closely reviewing and monitoring their accounts for unauthorized activity.

147.   As a direct and proximate result of Defendant's negligent conduct, Plaintiffs and the Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

148.   In addition to monetary relief, Plaintiffs and the Class Members also are entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

**COUNT III**
**BREACH OF CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASS)**

149.   Plaintiffs restate and reallege the allegations in paragraphs 1-112 as if fully set forth herein.

150.   Plaintiffs and Class Members entered into a valid and enforceable contract when they paid money to Defendant in exchange for services, which included promises to secure, safeguard, protect, keep private, and not disclose Plaintiffs' and Class Members' Private Information.

151.   Defendant's Privacy Policy memorialized the rights and obligations of Defendant and its customers. This document was provided to Plaintiffs in a manner and during a time where it became part of the agreement for services.[15]

152.   In the Privacy Policy, Defendant commits to protecting the privacy and security of private information and promises to never share customer information aside from limited exceptions.

---

[15] Terms of Purchase *available at* https://misc.seetickets.us/terms/

---

153.   Plaintiffs and the Class Members fully performed their obligations under their contracts with Defendant.

154.   Defendant did not secure, safeguard, protect, and/or keep private Plaintiff' and Class Members' Private Information and/or it disclosed their Private Information to third parties, and therefore Defendant breached its contract with Plaintiffs and Class Members.

155.   Defendant allowed third parties to access, copy, and/or transfer Plaintiffs' and Class Members' Private Information, without permission, and therefore Defendant breached its contracts with Plaintiffs and Class Members.

156.   Defendant's failure to satisfy its confidentiality and privacy obligations resulted in Defendant providing services to Plaintiffs and Class Members that were of a diminished value.

157.   As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein.

158.   In addition to monetary relief, Plaintiffs and the Class Members also are entitled to injunctive relief requiring Defendant to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE STATE SUBCLASS)**

159.   Plaintiffs restate and reallege the allegations in paragraphs 1-112 as if fully set forth herein.

160.   Defendant provides ecommerce services to Plaintiffs and Class Members. Plaintiffs and Class Members also formed an implied contract with Defendant regarding the provision of those services through their collective conduct, including by Plaintiffs

34

and Class Members paying for services and/or receiving goods in the form of event tickets from Defendant.

161.   Through Defendant's performance of, sale of, and/or purchase of goods and services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Personal Information in accordance with Defendant's policies, practices, and applicable law.

162.   As consideration, Plaintiffs and Class Members paid money to Defendant for goods and turned over valuable Personal Information to Defendant. Accordingly, Plaintiffs and Class Members bargained with Defendant to securely maintain and store their Personal Information.

163.   Defendant violated these contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Personal Information and by disclosing it for purposes not required or permitted under the contracts or agreements.

164.   Plaintiffs and Class Members have been damaged by Defendant's conduct, including by paying for data and cybersecurity protection that they did not receive, as well as by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT V
## VIOLATION OF THE LOUISIANA DATABASE SECURITY BREACH NOTIFICATION LAW
## LA. REV. STAT. ANN. § 51:3071, *ET SEQ.*
## (ON BEHALF OF PLAINTIFFS AND THE STATE SUBCLASS)

165.   Plaintiffs restate and reallege the allegations in paragraphs 1-112 as if fully set forth herein.

166.   Plaintiffs and State Subclass Members' compromised information (e.g., payment card number, card expiration date, and CVV number) constitute "personal information" as defined by La. Rev. Stat. Ann. § 51:3073(4)(a).

167.   Defendant owns or licenses computerized data that includes personal information within the meaning of La. Rev. Stat. Ann. § 51:3074(A).

168.   Defendant's data breach constitutes a "breach of the security of the system" as defined by La. Rev. Stat. Ann. § 51:3073(2).

169.   Defendant was required to notify Plaintiffs and State Subclass Members of the data breach "in the most expedient time possible and without unreasonable delay" pursuant to La. Rev. Stat. Ann. § 51:3074(C).

170.   On or about October 24, 2022, eighteen (18) months after discovering the data breach, Defendant began notifying affected individuals, including Plaintiffs.

171.   As a direct and proximate result of Defendant's unreasonable delay of eighteen (18) months in notifying Plaintiffs and State Subclass Members of the data breach, Plaintiffs and State Subclass Members have been damaged in an amount to be proven at trial.

172.   On behalf of Plaintiffs and State Subclass Members, Plaintiffs seek to enjoin the unlawful acts and practices described herein, to recover their actual damages and reasonable attorneys' fees.

**COUNT VI**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**CAL. BUS. & PROF. CODE § 17200, *ET SEQ.***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE STATE SUBCLASS)**

173.   Plaintiffs restate and reallege the allegations in paragraphs 1-112 as if fully set forth herein.

174.   Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

175.   Defendant violated Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

176.   Defendant's unlawful, unfair acts and deceptive acts and practices include:

36

a.  Defendant failed to implement and maintain reasonable security measures to protect Plaintiffs and the Class Members from unauthorized disclosure, release, data breaches, and theft, which was a direct and proximate cause of the Data Breach;

b.  Defendant failed to:

    i.  Secure its e-commerce website;

    ii.  Secure access to its servers;

    iii.  Comply with industry standard security practices;

    iv.  Employ adequate network segmentation;

    v.  Implement adequate system and event monitoring;

    vi.  Utilize modern payment systems that provided more security against intrusion;

    vii.  Install updates and patches in a timely manner, and

    viii.  Implement the systems, policies, and procedures necessary to prevent this type of data breach.

c.  Defendant failed to identify foreseeable security risks, remediate identified security risks, and adequately improve security. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiffs and the Class Members whose Private Information has been compromised;

d.  Defendant's failure to implement and maintain reasonable security measures also was contrary to legislatively declared public policy that seeks to protect consumer data and ensure that entities that are trusted with it use appropriate security measures. These policies are reflected in laws, including the FTCA, 15 U.S.C. § 45, California's Customer Records Act, Cal. Civ. Code § 1798.81.5 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*;

37

e.  Defendant's failure to implement and maintain reasonable security measures also lead to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiffs and the Class Members could not know of Defendant's inadequate security, consumers could not have reasonably avoided the harms that Defendant caused;

f.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs and the Class Members' Private Information, including by implementing and maintaining reasonable security measures;

g.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and the Class Members' Private Information, including duties imposed by the FTCA, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*;

h.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs and the Class Members' Private Information;

i.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and the Class Members' Private Information, including duties imposed by the FTCA, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*; and

j.  Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82.

177.  Defendant's representations and omissions to Plaintiffs and the Class Members were material because they were likely to deceive reasonable consumers about

38

the adequacy of Defendant's data security and ability to protect the privacy of consumers' Private Information.

178.   Defendant intended to mislead Plaintiffs and the Class Members and induce them to rely on its misrepresentations and omissions by, *inter alia*, delaying for more than eighteen (18) months in notifying customers about the data breach, including the nine-month period when Defendant knew it had a security problem but did not publicly announce that fact.

179.   Had Defendant timely disclosed to Plaintiffs and the Class Members that its data systems were not secure and, thus, vulnerable to attack, Defendant would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Defendant received, maintained, and compiled Plaintiffs and the Class Members' Private Information as part of the services and goods Defendant provided without advising Plaintiffs and the Class Members that Defendant's data security practices were insufficient. Accordingly, Plaintiffs and the Class Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

180.   Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiffs' and the Class Members' rights.

181.   As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and the Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

182.   Plaintiffs and the Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their Private Information;

CLASS ACTION COMPLAINT

declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

183.    Plaintiffs and the Class Members are also entitled to injunctive relief requiring Defendant to, e.g., (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to provide adequate credit monitoring to all Class Members.

**COUNT VII**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASS)**

184.    Plaintiffs restate and reallege the allegations in paragraphs 1-112 as if fully set forth herein.

185.    This count is plead in the alternative to Count III above.

186.    Defendant has retained the benefits of its unlawful conduct including the amounts received for data and cybersecurity practices that it did not provide. Due to Defendant's conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendant to be permitted to retain the benefit of their wrongful conduct.

187.    Plaintiffs and Class Members are entitled to full refunds, restitution and/or damages from Defendant and/or an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. If necessary, the establishment of a constructive trust from which the Plaintiffs and Class Members may seek restitution or compensation may be created.

188.    Additionally, Plaintiffs and the Class Members may not have an adequate remedy at law against Defendant, and accordingly plead this claim for unjust enrichment in addition to or, in the alternative to, other claims pleaded herein.

189.    Plaintiffs and Class Members conferred a benefit on Defendant by paying for data and cybersecurity procedures to protect their Private Information that they did not receive.

## COUNT VIII
## DECLARATORY JUDGMENT
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASS)

190.    Plaintiffs restate and reallege the allegations in paragraphs 1-112 as if fully set forth herein.

191.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

192.    Defendant owes a duty of care to Plaintiffs and the Class Members which required it to adequately secure Private Information.

193.    Defendant still possesses Private Information regarding Plaintiffs and the Class Members.

194.    Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their Private Information, and remain at imminent risk that further compromises of their Private Information will occur in the future.

195.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.  Defendant owes a legal duty to secure customers' Private Information and to timely notify customers of a data breach under the common law and Section 5 of the FTCA;

41

b. Defendant's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' Private Information; and

c. Defendant continues to breach this legal duty by failing to employ reasonable measures to secure customers' Private Information.

196. This Court also should issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with law and industry standards to protect customers' Private Information, including the following:

a. Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

b. Order Defendant to comply with its explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to:

  i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

  ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

  iii. auditing, testing, and training its security personnel regarding any new or modified procedures;

  iv. segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised,

42

hackers cannot gain access to other portions of Defendant's systems;

v. conducting regular database scanning and securing checks;

vi. routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

vii. meaningfully educating its users about the threats they face as a result of the loss of their Private Information to third parties, as well as the steps Defendant's customers must take to protect themselves.

197. If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

198. The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendant of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

199. Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant, thus eliminating the additional injuries that would result to Plaintiffs and customers whose Private Information would be further compromised.

43

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, seek the following relief:

    c. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are a proper representatives of the Classes requested herein;

    d. Judgment in favor of Plaintiffs and the Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

    e. An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

    f. An order instructing Defendant to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members;

    g. An order requiring Defendant to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

    h. A judgment in favor of Plaintiffs and the Classes awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, and

    i. An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all triable issues.

44

Dated: October ___, 2022

Respectfully submitted,

By: _/s/ Christopher Wren Czaplak_
Christopher Wren Czaplak, Esq.
(Cal. Bar No. 338818)
PRECEPT GROUP, LLP
8030 La Mesa Blvd., #268
La Mesa, CA 91942
Telephone: 619-354-4434
Facsimile: 866-265-7238
Email: chris@precept.co

Mason Barney, Esq. (*Pro Hac Vice to be filed*)
Ursula Smith, Esq. (*Pro Hac Vice to be filed*)
SIRI & GLIMSTAD LLP
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: mbarney@sirillp.com
Email: usmith@sirillp.com

*Attorneys for Plaintiffs*

45